MOULTON v. LOBDELL-EMERY MANUFACTURING COMPANY.

1. CONTRACTS—CONSTRUCTION—INTENT OF PARTIES.

Intention of parties in making contract should be ascertained by construing it in the light of circumstances existing at the time it was made and manifest intent must prevail over the literal sense of the terms.

2. SAME—SALE OF GOING CONCERN—EMPLOYMENT—TERMINATION— COMMISSIONS.

Under contract whereby plaintiff was to be employed by defendant as sales manager and in another capacity and for the purchase of his going manufacturing business and that in the event he was dismissed, became incapacitated or deceased, that he or his heirs should receive a stated commission "on all such articles manufactured and sold by the company for a period of 3 years" the termination of the contract effected his dismissal so as to entitle him to commissions.

3. SAME—TERMINATION—COMMISSIONS.

Under contract providing for payment of 5, 6, and 15 per cent. commissions to plaintiff for certain models of juvenile, porch and lawn furniture and that commissions to be paid on other, new or additional articles or models was to be that which was agreed upon when additions were made, defendant was properly found liable for commissions at flat $2\frac{1}{2}$ per cent. rate provided for three-year period in case of termination of contract on slightly different models with different numbers added after contract was terminated but during such three-year period.

Appeal from Gratiot; Cash (Paul R.), J. Submitted June 8, 1948. (Docket No. 21, Calendar No. 44,004.) Decided September 8, 1948.

REFERENCES FOR POINTS IN HEADNOTES

[1] 12 Am. Jur., Contracts, § 227.
[2, 3] 35 Am. Jur., Master and Servant, § 64.

Assumpsit by Clarence J. Moulton against Lob-dell-Emery Manufacturing Company, a Michigan corporation, for money due under a written contract. Judgment for plaintiff. Defendant appeals. Affirmed.

*Kingston & Porter,* for plaintiff.

*William C. O'Keefe,* for defendant.

Butzel, J. Plaintiff, Clarence J. Moulton, had established a large business in the manufacture and sale of juvenile furniture of his own design at his plant in Traverse City, Michigan. Defendant, Lobdell-Emery Manufacturing Company, manufactured and sold steering wheels and other articles of a similar nature at its plant in Alma, Michigan. Negotiations between them resulted in an oral agreement on May 1, 1940, under which defendant took over plaintiff's business and created a department which it named the "Moulton Division" for the purpose of continuing it, and plaintiff was employed by defendant as sales manager. He, therefore, closed his plant at Traverse City and transferred his entire business, accounts, good will, et cetera, to defendant. Plaintiff later demanded a written agreement and one was executed on November 1, 1942. So far as the record shows the relationship between the parties was still a happy one at the time the written contract was entered into, the previous arrangement having been mutually profitable and satisfactory.

The written agreement, in addition to providing for the continuance of the Moulton Division of defendant and the employment of plaintiff as sales manager thereof upon a commission basis, also provided for his employment in a different capacity at a fixed salary of $300 per month. The present liti-

gation does not involve employment of the plaintiff in the latter capacity.

The written contract was drawn by defendant's attorney, and paragraphs 6 and 7 thereof provide as follows:

"6. This agreement shall become effective as of November 1, 1942, and shall continue from year to year thereafter unless terminated by written notice given by either party to the other 60 days prior to termination date.

"7. In the event that Moulton should be dismissed, become incapacitated or deceased, he, and/or his heirs or assigns, shall receive a commission of 2½ per cent. payable monthly on all such articles manufactured and sold by the company for a period of 3 years."

On August 7, 1946, defendant notified plaintiff that its board of directors had, by resolution, elected to terminate the contract as of November 1, 1946. Subsequent to November 1, 1946, defendant continued to manufacture and sell nursery furniture such as had been previously manufactured under the contract. However, it refused to comply with plaintiff's demands for commissions on such sales. Plaintiff continued in defendant's employ for an additional month after November 1st in a capacity having no connection with his commission agreement. On April 1, 1947, he brought suit to recover accrued commissions which he claimed were due him under paragraph 7 of the contract. The case was tried without a jury and the trial judge rendered judgment for plaintiff for $1,999.44, the amount due up to March 31, 1947.

On appeal, defendant contends that under the terms of paragraph 6 of the contract it had a right to terminate the contract, and that its act in so terminating it did not constitute a dismissal of plaintiff within the meaning of paragraph 7.

In interpreting a contract, the Supreme Court is guided by established rules of construction and by the intention of the parties as indicated by the entire contract and surrounding circumstances. In *Nelson* v. *Big Rapids Gas Co.,* 299 Mich. 284, 297, we quoted from *Montgomery* v. *Central Bank & Trust Co. of Battle Creek,* 267 Mich. 142, 144, 145, as follows:

"There are certain cardinal rules of construction with which courts are in agreement.

" 'Every deed or contract in writing is supposed to express the intention of the parties executing it, and when the object or purpose of such deed or contract is called in question in a court of justice the first inquiry is, what is the intention of the parties, as expressed in the written instrument?' *Bassett* v. *Budlong,* 77 Mich. 338, 346 (18 Am. St. Rep. 404).

"To ascertain such intent, it 'should be construed in the light of the circumstances existing at the time it was made.' *Kellogg* v. *Kellogg Toasted Corn Flake Co.,* 212 Mich. 95, 114. In doing so, we 'must look to the purpose sought to be accomplished.' *Hess* v. *Haas,* 230 Mich. 646, 651, and 'uphold, and enforce the rights and duties that spring from the real intention of the parties.' 21 C. J. p. 204. Its 'manifest intent must prevail over the literal sense of terms.' *Township of Stambaugh* v. *Iron County Treasurer,* 153 Mich. 104, 107.

" 'And in order that the court may see just how the transaction came about and received the shape it actually bears, a reference is proper to the surrounding facts. * * * There is no requirement to adhere to the literal terms in derogation of the interior sense of the transaction.' *Stuart* v. *Worden,* 42 Mich. 154, 160."

It is manifest that the contract in the instant case is one of employment as well as the acquisition of the entire assets of a going business, and that the parties intended by paragraph 7 to provide for the

payment of continuing commissions to plaintiff in the event of his dismissal from employment thereunder. From the circumstances which led up to the execution of the contract, it is quite clear that this provision was inserted into the contract because of the fact that plaintiff had turned this valuable going business over to defendant for which he had received no other consideration than the defendant's agreement to employ him. It cannot be successfully argued that defendant's act of terminating the contract did not result in a termination of plaintiff's employment. This constituted a dismissal of plaintiff within the meaning of paragraph 7, and entitled plaintiff to the commissions provided for therein.

Defendant also contends that the trial court erred in allowing commissions on all items of juvenile furniture sold by its nursery division since the termination of the contract became effective; that the model numbers of the various items, except for three of them, have all been changed since the contract was entered into, and that the contract provided for the payment of commissions upon specific models.

Paragraph 3 of the contract provides that commissions should be paid plaintiff upon customers' invoices as follows:

"1. 5 per cent. on nursery models M–30, M–35, and M–37.

"2. 6 per cent. on nursery models M–36, M–50, M–55, and M–60.

"3. 15 per cent. on porch and lawn furniture.

"4. The commissions to be paid upon other, new or additional articles and/or models which may be added to the above line in the future shall be agreed upon when, as, and if such articles and/or models may be added thereto."

Paragraph 7 hereinbefore quoted, provides for the payment of a commission of $2\frac{1}{2}$ per cent. "on all such articles manufactured and sold by the company for a period of 3 years." The testimony shows that practically the same models continued to be manufactured, with only minor variations being made therein, even though the model numbers used to distinguish them were changed from time to time for various reasons. Section 4 of paragraph 3 provides for payment of commissions on new models. Paragraph 7 provides for payment of commissions on "all such articles." This must mean that commissions were to be paid on all articles on which commissions were payable under the contract.

The trial court correctly determined the amount of damages due plaintiff for the period from November 1, 1946, to March 31, 1947, as per stipulation reflecting what the records showed.

The judgment is affirmed, with costs to plaintiff.

Bushnell, C. J., and Sharpe, Boyles, Reid, North, Dethmers, and Carr, JJ., concurred.