ZURICH INSURANCE COMPANY v CCR AND COMPANY (ON
REHEARING)

Docket No. 199184. Submitted September 3, 1997, at Grand Rapids.
Decided November 25, 1997, at 9:35 A.M. Leave to appeal sought.

Zurich Insurance Company, as the subrogee of Michigan Carton and
Paperboard Company, brought an action in the Calhoun Circuit
Court against CCR and Company, seeking indemnification for
worker's compensation benefits paid to the estate of a Michigan
Carton employee who was accidentally struck and killed by a CCR
truck driven by a CCR employee. CCR and Michigan Carton had
entered into contracts whereby CCR was to provide cartage ser-
vices to Michigan Carton. The contracts contained clauses provid-
ing that CCR agreed to indemnify Michigan Carton for all claims
for death or personal injuries arising from CCR's transportation of
Michigan Carton's products. The court, James C. Kingsley, J.,
granted summary disposition in favor of Zurich. CCR appealed. The
Court of Appeals vacated the judgment of the circuit court and
remanded the matter to that court in an opinion issued October 31,
1997, that was to be published. On further consideration, the Court
of Appeals sua sponte entered an order on November 20, 1997, that
granted rehearing and vacated the Court's prior opinion.

On rehearing, the Court of Appeals *held*:

1. An indemnity contract is to be construed in the same fashion
as are contracts generally. Where, as here, the terms of the contract
are unambiguous, their construction is for the court to determine
as a matter of law and the plain meaning of the terms may not be
impeached with extrinsic evidence. The trial court did not err in
refusing to consider parol evidence concerning the intent of the
parties when executing the contracts. When effectuating the inten-
tions of parties to an unambiguous contract, the court looks only to
the unambiguous terms of the contract and the intention expressed
therein.

2. The parol evidence rule applies with equal force to the con-
struction and application of indemnity contracts.

3. The meaning to be discovered and applied is that which each
party to the contract had reason to know would be given to the
words by the other party. Antecedent and surrounding factors that

throw light upon this question may be proved by any kind of relevant evidence. Here, the defendant identified no such circumstances that might alter the plain and otherwise unambiguous language of the contract.

Affirmed.

1. INDEMNITY — CONTRACTS — EVIDENCE — CONSTRUCTION.

An indemnity contract is to be construed in the same fashion as are contracts generally; the court will ascertain the intent of the parties both from the language used and from the surrounding circumstances; where a contractual term is otherwise ambiguous or subject to more than one possible construction within the four corners of the written instrument and the circumstances or relations of the parties underlying the contract resolve the ambiguity, the court must inquire into them in performing its interpretive function.

2. CONTRACTS — EVIDENCE — CONSTRUCTION.

The meaning to be discovered and applied in construing a contract is that which each party had reason to know would be given to the words by the other party; antecedent and surrounding factors that throw light upon this question may be proved by any kind of relevant evidence.

3. INDEMNITY — CONTRACTS — PAROL EVIDENCE.

The parol evidence rule applies with equal force to the construction and application of indemnity contracts.

*Smith, Haughey, Rice & Roegge* (by *Elizabeth Roberts VerHey*), for the plaintiff.

*Sullivan, Hamilton, Schulz, Letzring, Simons, Kreter, Toth & Lebeuf, P.C.* (by *Kurt F. Letzring*), for the defendant.

ON REHEARING

Before: O'CONNELL, P.J., and MACKENZIE and GAGE, JJ.

O'CONNELL, P.J. In this contract action stemming from two indemnification agreements, defendant CCR and Company appeals as of right the order of the cir-

cuit court granting summary disposition in favor of plaintiff, Zurich Insurance Company.[1] We affirm.

Defendant provided cartage services to Michigan Carton and Paperboard Company pursuant to contract. Two contracts appear in the record. The first contains an integration clause, covering the period February 7, 1991, through February 6, 1992, and thereafter unless canceled by either party upon thirty days' written notice, while the second is dated June 1, 1993, contains a similar thirty-day cancellation provision, but is less extensive and includes neither an integration clause nor a term clause. The second does not declare what effect, if any, it has on the first, that is, whether it is supplemental (in part, it provides for a lease of tractors and trailers, a subject not addressed in the earlier contract) or supplantive. The earlier contract also contains a clause specifying that it can be amended or affected only by a further written contract; we note that such language, although frequently seen, is wholly nugatory. *Reid v Bradstreet*, 256 Mich 282, 286; 239 NW 509 (1931).

Both of these contracts contain clauses providing that defendant agreed to indemnify Michigan Carton for all claims for death or personal injuries arising from the defendant's transportation of Michigan Carton's products.[2] When an employee of defendant, who

---

[1] Initially, in an October 31, 1997, opinion, we vacated the judgment of the circuit court and remanded. On further consideration sua sponte, MCR 7.216(A)(7), we entered an order on November 20, 1997, that granted rehearing and vacated our prior opinion. On rehearing, we now affirm the judgment of the circuit court.

[2] To facilitate discussion, we have summarized the gist of the two indemnification clauses. Though their precise wording is not necessary to our opinion, in the interest of thoroughness we quote them in their entirety below.

The "Transportation Agreement—Local Cartage" provides as follows:

was driving a truck owned by defendant, accidentally struck and killed an employee of Michigan Carton, Michigan Carton first referred the matter to its worker's compensation liability insurer, plaintiff Zurich, without evaluating whether it could rely on the indemnification provisions.

Plaintiff paid worker's compensation benefits to the estate of the deceased employee, thereby satisfying Michigan Carton's obligations and removing it from the litigation that was to ensue. Plaintiff, as subrogee of Michigan Carton, then brought suit against defendant. Plaintiff contended that by dint of the fact that it had satisfied what would have been Michigan Carton's financial obligations arising from the death of the employee, it was subrogated to Michigan Carton's right to indemnification against defendant. The circuit court agreed and granted plaintiff's motion for summary disposition pursuant to MCR 2.116(C)(10). Defendant now appeals as of right. Our review is de novo. *Pinckney Community Schools v Continental Casualty Co*, 213 Mich App 521, 525; 540 NW2d 748 (1995).

---

> [Defendant] agrees to indemnify and save harmless [Michigan Carton] for any and all claims for death or injury to person and/or loss of or damage to property, of any nature whatsoever, growing out of or in any way arising from the transportation by [defendant] of the goods of [Michigan Carton].

The indemnity clause of the second contract, the "Motor Transportation Agreement," is similar, though not identical:

> [Defendant] agrees to indemnify [Michigan Carton] against all liability for any and all claims for loss and/or damage to Property and/or Personal injuries arising out of, or in any way connected with, the acts or omissions of [defendant], [defendant's] employees, servants and/or agents.

Defendant first argues on appeal that the circuit court erred in granting plaintiff's motion after it refused to consider parol evidence concerning the intent of the parties when executing the contracts containing the indemnification provisions presently at issue. Defendant averred by affidavits—duly submitted to the trial court in opposition to the motion for summary disposition, and thus properly considered by this Court on appeal, *Quinto v Cross & Peters Co*, 451 Mich 358, 366-367, n 5; 547 NW2d 314 (1996)—that Michigan Carton and defendant at no time "intended to create a duty upon [defendant] to indemnify Michigan Carton . . . or its subrogee, for workers compensation benefits paid for injury to its employees . . . ." If the affidavits were competent evidence regarding the issue at bar, a question concerning the weight and credibility to be given to such averments would be presented, and, on familiar principles, summary disposition would then be precluded because of the presence of a triable issue of fact.

An indemnity contract is construed in the same fashion as are contracts generally. *Triple E Produce Corp v Mastronardi Produce, Ltd*, 209 Mich App 165, 172; 530 NW2d 772 (1995). As stated in *Klever v Klever*, 333 Mich 179, 186; 52 NW2d 653 (1952), *quoting McIntosh v Groomes*, 227 Mich 215, 218; 198 NW 954 (1924): " 'The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties. To this rule all others are subordinate.' " However, when ascertaining the intent of the parties to a contract,

"[i]t must not be supposed . . . that an attempt is made to ascertain the actual mental processes of the parties to a particular contract. The law presumes that the parties

understood the import of their contract and that they had the intention which its terms manifest. It is not within the function of the judiciary to look outside of the instrument to get at the intention of the parties and then carry out that intention regardless of whether the instrument contains language sufficient to express it; but their sole duty is to find out what was meant by the language of the instrument."

. . . We must look for the intent of the parties in the words used in the instrument. This court does not have the right to make a different contract for the parties or to look to extrinsic testimony to determine their intent when the words used by them are clear and unambiguous and have a definite meaning. [*Michigan Chandelier Co v Morse*, 297 Mich 41, 49; 297 NW 64 (1941). Citation omitted.]

Thus, where the terms of a contract are unambiguous, their construction is for the court to determine as a matter of law, *Mt Carmel Mercy Hosp v Allstate Ins Co*, 194 Mich App 580, 588; 487 NW2d 849 (1992), and the plain meaning of the terms may not be impeached with extrinsic evidence. *Michigan Chandelier, supra.*

It is beyond doubt that the actual mental processes of the contracting parties are wholly irrelevant to the construction of contractual terms. Rather, the law presumes that the parties understand the import of a written contract and had the intention manifested by its terms. *Birchcrest Bldg Co v Plaskove*, 369 Mich 631, 637; 120 NW2d 819 (1963). Accordingly, a written contract is construed according to the intentions therein *expressed*, when those intentions are clear from the face of the instrument. *Bonney v Citizens' Mut Automobile Ins Co*, 333 Mich 435; 53 NW2d 321 (1952); *Teeter v Teeter*, 332 Mich 1; 50 NW2d 716 (1952). Thus, these affidavits are extrinsic evidence, not competent evidence, and cannot and do not cre-

ate a triable issue of fact in avoidance of the motion for summary disposition. No other documentary evidence in opposition to the motion for summary disposition was submitted, and thus summary disposition was properly granted. *Quinto, supra,* pp 362-363.

In the present case, the trial court determined that the indemnification agreements at issue suffered no ambiguity, and defendant does not contest this determination on appeal. Rather, defendant asserts that regardless of the precise words used in the instruments, defendant should be allowed recourse to extrinsic evidence to demonstrate that the words used, unambiguous though they may be, do not reflect the intentions of the parties to the agreements. The circuit court, however, ruled, correctly in our opinion, that an unambiguous contract may not be so impeached.[3] When effectuating the intentions of parties to an unambiguous contract, the court looks only to the unambiguous terms of the contract and the intention expressed therein. *Id.* Here, because defendant tacitly concedes that the indemnification provisions are not ambiguous, neither this Court nor the circuit court should be viewed as possessing the

---

[3] An exception would be if another instrument showed that the words used by the parties were a code, and that the parties had for their own purposes redefined ordinary English words or phrases so as to give them a special agreed meaning. As Professor Corbin put it (citing Mr. Justice Oliver Wendell Holmes' article "Theory of Legal Interpretation," 12 Harv L Rev 417 [1899]), "[w]hite can be made to mean black; five can be made to mean ten, 500 feet can be made to mean 100 inches, and Bunker Hill Monument can be made to signify Old South Church." 3 Corbin, Contracts, § 544, p 155, cited in *Beason v Beason (After Remand),* 204 Mich App 178, 185-186; 514 NW2d 231 (1994) (TAYLOR, J., dissenting), rev'd 447 Mich 1023 (1994).

authority to look beyond the four corners of the documents.

Defendant does, however, raise an interesting point that merits further treatment. Relying on this Court's decision in *Chrysler Corp v Brencal Contractors, Inc*, 146 Mich App 766, 771; 381 NW2d 814 (1985), defendant submits, in effect, that indemnity contracts are construed differently than contracts generally with respect to the point of law discussed above. In support of this argument, defendant quotes the following passage from *Chrysler*:

> There are several well established rules of construction of indemnity contracts. An indemnity contract is construed in accordance with the rules for the construction of contracts generally. The cardinal rule in the construction of indemnity contracts is to enforce them so as to effectuate the intentions of the parties. *Intention is determined by considering not only the language of the contract but also the circumstances surrounding the contract, including the situation of the parties. [Id.* Emphasis supplied.]

On the basis of this passage it is contended that, with respect to indemnity contracts, the court *may* consider extrinsic evidence when construing even an *unambiguous* contract. Accord *Triple E, supra*, p 172 ("Indemnity contracts should be construed to effectuate the intent of the parties, which may be determined by considering the language of the contract, the situation of the parties, and the circumstances surrounding the making of the contract."); *MSI Constr Managers, Inc v Corvo Iron Works, Inc*, 208 Mich App 340, 343; 527 NW2d 79 (1995) ("In ascertaining [the intentions of the parties], one must consider the language used in the contract as well as the situation of the parties and circumstances surrounding the con-

tract."); *Sherman v DeMaria Bldg Co, Inc*, 203 Mich
App 593, 598; 513 NW2d 187 (1994)  ("Having deter-
mined that the contract language was unambiguous,
we now must ascertain whether the parties intended
to indemnify [the defendant] against losses caused by
its own negligent acts."); *Pritts v J I Case Co*, 108
Mich App 22, 29; 310 NW2d 261 (1981)  ("Intention is
determined by considering not only the language of
the contract but also the situation of the parties and
the circumstances surrounding the contract."); see
also *Calladine v Hyster Co*, 155 Mich App 175, 182;
399 NW2d 404 (1986); *Paquin v Harnischfeger Corp*,
113 Mich App 43, 50; 317 NW2d 279 (1982).

Defendant, in placing reliance on these authorities,
misconstrues their import. In construing any contract,
whether one of indemnification or otherwise, the
court will ascertain the intent of the parties both from
the language used and from the surrounding circum-
stances. *First Baptist Church of Dearborn v Solner*,
341 Mich 209; 67 NW2d 252 (1954);  *Moulton v Lob-
dell-Emery Mfg Co*, 322 Mich 307; 33 NW2d 804
(1948).  All this means is that if a contractual term is
otherwise ambiguous or subject to more than one
possible construction within the four corners of the
written instrument and the circumstances or relations
of the parties underlying the contract resolve that
ambiguity, the Court must inquire into them in per-
forming its interpretive function. Thus, in the case
that engendered the previously cited authorities sug-
gesting that indemnification contracts might some-
how be subject to this rule of construction, *Vanden
Bosch v Consumers Power Co*, 394 Mich 428; 230
NW2d 271 (1975),  the Court, in an order—which of
itself suggests the point is so clear that neither oral

argument nor extensive analysis is required—noted that the presumption that a contract of indemnity does not protect the indemnitee against the consequences of its own negligence unless expressly so stated in the contract ought not be applied where the circumstances of the parties were that the indemnitee, Consumers Power Company in that case, as an accommodation to the indemnitor's corporate principal, agreed to allow the corporate principal to build and maintain a structure "in a location where it otherwise did not have a right to do so . . . ." Hence, the Court was persuaded, despite the fact that such notion was nowhere expressly stated in the agreement, "from our reading of that agreement, *in light of the surrounding circumstances*, that the parties intended that Consumers Power be indemnified against liability for its own negligence of the type precipitating this litigation." (Emphasis supplied.)

This concept is consistent with the view by a leading authority on contract law, who opines that "[t]he meaning to be discovered and applied is that which each party had reason to know would be given to the words by the other party. Antecedent and surrounding factors that throw light upon this question may be proved by any kind of relevant evidence." 3 Corbin, Contracts, § 579, pp 418-420.

In the present case, defendant has identified no such circumstances[4] that might alter the plain and

---

[4] The "circumstances of the parties," as is clear from the *Vanden Bosch* case itself, is by no means the same as the parties' unexpressed intent. Consider, by way of example, a contract that says A will pay B $X for Y eagles. If A and B are ordinary (nonnative American) contracting parties, their contract is void as against public policy, because it is illegal to deal in eagles (Bald or American/Golden eagles) in any way, shape, or form, and both parties could be heav-

otherwise unambiguous language of the contract, pursuant to which its obligations of indemnification are without limitation as long as the engendering cause arises from its provision of transportation services. Indeed, although the second contract specifically identifies worker's disability compensation insurance as something defendant must provide at its own expense (for its employees), the indemnification clause neither mentions that subject nor otherwise suggests an intention to exclude such liabilities from the scope of the indemnification liability created. Thus, the terminology (and the necessity for its use, if agreed) was known and available to the scriveners but was not utilized for the purpose advocated by defendant. Accordingly, the circumstances of these

---

ily fined and imprisoned for up to two years. 16 USC 668(a). On the other hand, if A and B are numismatists, the "circumstances" of the contract obviously relate unambiguously not to bird-type eagles (of the family *Haliaeetus* or *Aquila*) but to $10 American gold pieces minted between 1795 and 1933; such a contract is legal and enforceable (if however the contract called for payment in gold eagles, it would violate the legal tender act, 31 USC 5103 and 5118(d)(2), and again be void as against public policy). If A is a sporting goods company and B is a professional golfer, then the "circumstances of the parties" unambiguously relate to incentive pay, whereby if the golfer achieves a score on some number of holes of two under par ("an eagle") the company will pay extra for the wearing of its trademark and endorsement of its products. Again, the contract is legal and enforceable. Yet another meaning would arise if A were the Boy Scouts of America and B a paid scoutmaster, seeking incentive pay for shepherding some number of charges to the rank of Eagle Scout. The circumstances of the parties thus can give a completely different meaning to seemingly straightforward and unambiguous terminology, without any resort to testimony whether A or B, unilaterally [or by subsequent meeting of the minds to the detriment of an affected third party (the insurer)] intended the contract to include some added terms— which is, however, precisely the contention made by defendant in this case. This relevance of circumstance is a feature common to all contracts, not just indemnity contracts, *First Baptist Church, supra; Moulton, supra.*

parties do not alter or affect the construction of the contractual language chosen, and no ambiguity being otherwise extant, parol evidence to vary the terms of the agreement is inadmissible. *Dowagiac Mfg Co v Corbit*, 127 Mich 473, 476; 86 NW 954 (1901).

The parol evidence rule applies with equal force to the construction and application of indemnity contracts. *Pritts, supra*, p 36, citing *Union Oil Co of California v Newton*, 397 Mich 486, 488; 245 NW2d 11 (1976); *Michigan Nat'l Bank of Detroit v Holland-Dozier-Holland Sound Studios*, 73 Mich App 12, 14-17; 250 NW2d 532 (1976). Summary disposition was therefore properly granted for plaintiff.

Affirmed.