# STATE OF MICHIGAN

# COURT OF APPEALS

MATHEW DUNASKISS,

Plaintiff-Appellee,

v

VARADEE DUNASKIS,

Defendant-Appellant.

UNPUBLISHED
May 16, 2017

No. 331303
Oakland Circuit Court
LC No. 2015-145753-CK

Before: TALBOT, C.J., and K. F. KELLY and BORRELLO, JJ.

PER CURIAM.

In this breach of contract action, defendant appeals by right a January 6, 2016, trial court order granting plaintiff's motion for summary disposition pursuant to MCR 2.116(C)(10). For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

Plaintiff and defendant are siblings[1] and are beneficiaries in three estates of their deceased relatives including their parents Frank and Aldona Dunaskis. Specifically, plaintiff and defendant are beneficiaries of the following three estates:

The Estate of Anna Suvesdis, Wayne County Probate Court (Wayne Estate)

The Estate of Frank and Aldona Dunaskis, Maricopa County Superior Court (Arizona) (Maricopa Estate)

The Estate of Aldona Dunaskis, Oakland Probate Court (Oakland Estate).

Plaintiff is the personal representative of the Oakland Estate; the Oakland Estate contained, among other property, six parcels of real property in Oakland County. Both plaintiff and defendant owned a 25-percent stake in the properties and the remaining 50-percent stake was included in the Oakland Estate.

---

[1] Although the parties are siblings, the spelling of their last name is different in the lower court record and in their appellate court filings; Mathew "Dunaskiss" and Varadee "Dunaskis."

-1-

The parties had disputes about the distribution of the estates. On October 31, 2014, the parties entered into a "Memorandum of Understanding and Agreement" (Memorandum). The Memorandum's stated purpose was to resolve the disputes about the six Oakland parcels by facilitating the transfer of defendant's 25-percent ownership interest in the parcels to plaintiff in exchange for $1 million. The Memorandum provided the terms of payment as follows:

> [Plaintiff] agrees to pay [defendant] the total sum of [$1 million] in exchange for her waiver and release of any interests in the above-identified estates and/or the complete and total transfer of her interests in the above-identified estates to Mathew Dunaskiss and as a global resolution of all pending issues and disputes. The payment of $1,000,000.00 will be made as follows:
>
> > $100,000.00 paid to Varadee Dunaskis on October 31, 2014;
> >
> > $100,000.00 paid to Varadee Dunaskis upon closure of each probate estate for a total of $300,000.00;
> >
> > $50,000.00 to be paid to Varadee Dunaskis on the first business day every six months until the remaining amount up to the total of $1,000.000.00 has been paid in full. Said monthly payments will begin 6 months after the closure of the final/last estate closure. *Mathew Dunaskiss agrees to pay interest of 3% on an annual basis on the remaining monies owed.* Further, *Mathew Dunaskiss may relieve any obligation to pay the 6 month payments by transferring to Varadee Dunaskis either of the Lake Orion properties.* In no event shall Mathew Dunaskiss be required to pay more than the total of $1,000,000.00. [Emphasis added.]

Plaintiff paid the initial $100,000. Then, the parties signed an addendum to the Memorandum which required plaintiff to pay defendant $200,000 on or before November 17, 2014, instead of paying $300,000 upon the closing of the three probate estates. Plaintiff paid the $200,000 and the three probate estates were closed.

On February 24, 2015, plaintiff commenced this breach of contract action in the circuit court, seeking to enforce the Memorandum and quiet title to the six parcels. Plaintiff alleged that he paid defendant $300,000 (the initial $100,000 plus the $200,000 per the addendum). Plaintiff alleged that defendant refused to sign quit-claim deeds to the parcels in violation of the terms of the Memorandum agreement.

Responding in propria persona, defendant filed a lengthy answer to the complaint. Relevant to this appeal, defendant appeared to argue that she did not violate the Memorandum because the Memorandum did not contain terms indicating when she was required to sign-off on the deeds to the six parcels. Defendant asserted that the "spirit of the agreement implies completion of the accounting through probate as well as full payment per terms of the contract." Defendant argued that she was not required to sign any deed until "full completion of payment," and maintained that plaintiff was required to pay $700,000 before she would relinquish the deeds.

On July 15, 2015, plaintiff moved for summary disposition. At a hearing, plaintiff recounted that the parties had been fighting over the three estates for seven or eight years and had spent "hundreds of hours" in probate court. Finally, the parties reached a "global agreement" when they signed the Memorandum. The three estates were closed and the only issue remaining involved defendant's 25-percent stake in the six parcels of property. Plaintiff noted that defendant owned 25 other properties and plaintiff had likely over-paid for the six parcels. Plaintiff argued that he paid $300,000 to defendant, some of which was paid to Wayne County to pay defendant's back-taxes on the properties. Plaintiff argued that he needed the titles to the parcels so that he could sell them in order to acquire assets necessary for payment to defendant. Plaintiff argued that there was no genuine issue of material fact and he was entitled to summary disposition.

Defendant admitted that she signed the Memorandum, but asserted that the Memorandum indicated she would release the 25-percent stake once she was paid the full $1 million with three percent interest. Defendant argued that if she transferred the deeds before plaintiff made full payment, she would be unprotected with only a piece of paper and a person (plaintiff) who had "turned into the devil after my mother died."

The trial court found that the Memorandum did not indicate when defendant was required to transfer the deeds to plaintiff, indicating "it's ambiguous at- - at what point she was supposed to transfer that 25 percent interest, whether it was at the beginning or after the final payment." The court denied plaintiff's motion without prejudice because there was nothing to indicate that defendant was required to transfer the deeds absent full payment from plaintiff.

Thereafter, on November 9, 2015, plaintiff again moved for summary disposition. Plaintiff argued that he offered payment in full to defendant in the amount of $700,000 in principal and $21,000 interest. Defendant refused to accept the payment and refused to transfer the deeds. Defendant maintained that under the terms of the Memorandum, plaintiff was required to make $50,000 payments every six months with annual three-percent interest payments. She argued that the Memorandum did not contain an acceleration clause.

Following a hearing,[2] the trial court entered a written order granting plaintiff's motion for summary disposition, and quieted title in the six parcels in favor of plaintiff. This appeal ensued.

## II. STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Because the trial court considered evidence outside the pleadings, we review the motion as having been granted under MCR 2.116(C)(10). *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270; 826 NW2d 519 (2012). "In reviewing a motion brought under MCR 2.116(C)(10), we review the evidence

---

[2] The transcript of the hearing cut-off after the parties placed their arguments on the record because the "recording stopped," abruptly. The trial court's reasoning for granting the motion was not included in the transcript.

submitted by the parties in a light most favorable to the nonmoving party to determine whether there is a genuine issue regarding any material fact." *Id*. This case also requires that we interpret and apply the contract at issue; issues involving contract interpretation are reviewed de novo as questions of law. *Burkhardt v Bailey*, 260 Mich App 636, 646; 680 NW2d 453 (2004). Similarly, we review de novo equitable actions including actions to quiet title. *Id*.

## III. ANALYSIS

Defendant argues that the trial court erred in finding that she breached the terms of the Memorandum. Resolution of this issue requires that we interpret and apply the contract. A contract "must be interpreted according to its plain and ordinary meaning." *Ajax Paving Indus., Inc. v Vanopdenbosch Const Co*, 289 Mich App 639, 644; 797 NW2d 704 (2010). "[W]here the terms of a contract are unambiguous, their construction is for the court to determine as a matter of law . . . and the plain meaning of the terms may not be impeached with extrinsic evidence." *Zurich Ins Co v CCR & Co*, 226 Mich App 599, 604; 576 NW2d 392 (1997) (citations omitted). In contrast, where terms are ambiguous and subject to more than one interpretation, a trial court may consider parole evidence in ascertaining the parties' intent. *Id*. at 607-608.

Defendant argues that the trial court erred because the contract did not allow plaintiff to accelerate the payment for the six properties absent plaintiff's agreement to transfer one of the Lake Orion properties. Instead, defendant maintains, after the upfront payments, the contract required plaintiff to make $50,000 payments every six months and required plaintiff to pay three-percent interest on an annual basis on the remaining amount owed. Essentially, defendant argues that there was no acceleration clause in the contract and therefore accelerated payment was not permitted. We turn to the plain language of the contract to resolve this issue.

The first paragraph of the Memorandum provides the terms of payment as follows:

Mathew Dunaskiss agrees to pay Veradee Dunaskis the total sum of $1,000,000.00 in exchange for her waiver and release of any interests in the above-identified estates and/or the complete and total transfer of her interests in the above-identified estates to Mathew Dunaskiss and as a global resolution of all pending issues and disputes. The payment of $1,000,000.00 will be made as follows:

$100,000.00 paid to Varadee Dunaskis on October 31, 2014;

$100,000.00 paid to Varadee Dunaskis upon closure of each probate estate for a total of $300,000.00;

$50,000.00 to be paid to Varadee Dunaskis on the first business day every six months until the remaining amount up to the total of $1,000.000.00 has been paid in full. Said monthly payments will begin 6 months after the closure of the final/last estate closure. *Mathew Dunaskiss agrees to pay interest of 3% on an annual basis on the remaining monies owed.* Further, *Mathew Dunaskiss may relieve any obligation to pay the 6 month payments by transferring to Varadee Dunaskis either of the Lake Orion*

-4-

*properties*.  In no event shall Mathew Dunaskiss be required to pay more than the total of $1,000,000.00.  [Paragraph 1 (emphasis added).]

The parties later signed an addendum, which provides in relevant part as follows:

[] [T]o date Varadee Dunaskis has received from Mathew Dunaskiss One Hundred Thousand and 00/100 ($100,000.00) dollars;

[] Varadee Dunaskis desires to receive an additional [] ($200,000.00) dollars prior to the due date for the payment of same stated in the above identified Memorandum. . . .

[] Mathew Dunaskiss is agreeable to modifying the [Memorandum] . . . to paying Varadee Dunaskis the $50,000.00 every 6 months beginning January 2017 until the balance is paid in full in accordance with the original [Memorandum].  []

NOW, THEREFORE, Mathew Dunaskiss agrees to pay to Varadee Dunaskiss [] ($200,000.00) dollars on or before November 17, 2014.  Said payment . . . shall eliminate the obligation of Mathew Dunaskiss to pay to Varadee Dunaskis [] ($100,000.00) dollars upon the closure of each of the three (3) probate estates, as set forth in paragraph 1 of the [Memorandum]. . . .

All other terms and conditions of the [Memorandum] [] remain in full force and effect.

The Memorandum does not contain any terms indicating when defendant is required to relinquish title to the properties.  The contract merely indicates that "Mathew Dunaskiss agrees to pay Varadee Dunaskis the total sum of [$1 million] in exchange for her waiver and release of any interests" in the six parcels of real property.  There is no other language in the contract requiring defendant to sign over the deeds to the property before plaintiff satisfies the payment requirement.  The logical import of this language is that plaintiff's payment obligation is a condition precedent to defendant's obligation to relinquish her interest in the subject properties.  "A 'condition precedent' is a condition that must be met by one party before the other party is obligated to perform." *Archambo v Lawyers Title Ins Corp*, 466 Mich 402, 412; 646 NW2d 170 (2002).  The contractual language in this case clearly conditions defendant's relinquishment of her interest in the properties on plaintiff's satisfaction of the terms of payment.  Accordingly, we must determine what the terms of payment are and whether plaintiff satisfied those terms.

It is undisputed that plaintiff paid defendant $300,000 upfront before any of the six-month installment payments were due.  Plaintiff argued in the lower court that he had a certified check for $700,000 prepared for defendant plus a $21,000 interest payment, yet defendant refused to sign over the deeds.

Plaintiff conceded at oral argument that the contract was, at best, unartfully drafted.[3]  The terms and conditions of the agreements are written in such a manner as to be confusing, contradictory and misleading.  For example, the contract provides both for the payment of interest on the principal amount of $1,000,000,000 but also that the amount paid cannot exceed $1,000,000,000.  Hence, from this contradictory, confusing and misleading contract we cannot glean the true intent of the parties, except to conclude that for purposes of this particular case, there is nothing in the contract which specifically forbids plaintiff from tendering the entire amount owed to plaintiff.  Accordingly, we cannot find that the trial court erred by so holding.

Affirmed.  Defendant having prevailed in full may tax costs.  MCR 7.219(A).


/s/ Michael J. Talbot
/s/ Kirsten Frank Kelly
/s/ Stephen L. Borrello

---

[3] Also at oral argument, defendant was allowed to appear to answer questions.  Before the Chief Judge could inquire of the panel whether there were any questions, defendant began shouting accusatory statements about plaintiff being a crook and continued to do so while be told she could be held in contempt for such behavior.