*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MCKENNA FROWNFELTER,

Plaintiff-Appellant,

v

ESURANCE PROPERTY AND CASUALTY
INSURANCE COMPANY,

Defendant/Third-Party Plaintiff-
Appellee,

and

PROGRESSIVE MICHIGAN INSURANCE
COMPANY, FARMERS INSURANCE
COMPANY, and AUTO-OWNERS INSURANCE
COMPANY,

Third-Party Defendants-Appellees.

UNPUBLISHED
February 24, 2025
11:42 AM

No. 366118
Oakland Circuit Court
LC No. 2020-184089-NF

_____

MCKENNA FROWNFELTER,

Plaintiff-Appellant,

v

COREY FROWNFELTER, AUTO-OWNERS
INSURANCE COMPANY, and ESURANCE
PROPERTY AND CASUALTY INSURANCE
COMPANY,

Defendants-Appellees.

No. 366120
Oakland Circuit Court
LC No. 2022-192235-NI

_____

-1-

Before: LETICA, P.J., and GARRETT and FEENEY, JJ.

PER CURIAM.

In Docket No. 366118, plaintiff, McKenna Frownfelter, appeals as of right from the trial court's April 24, 2023 final order granting judgment in her favor, against defendant, third-party plaintiff Esurance Property and Casualty Insurance Company (Esurance), and third-party defendants Progressive Michigan Insurance Company (Progressive), Farmers Insurance Company (Farmers), and Auto-Owners Insurance Company (Auto-Owners). In Docket No. 366120, plaintiff appeals as of right from the trial court's April 24, 2023 final order granting judgment in her favor against defendants Corey Frownfelter (Frownfelter), Auto-Owners, and Esurance.[1]

In Docket No. 366118, plaintiff challenges the trial court's earlier order entered denying Esurance's motion for summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact and moving part entitled to judgment as a matter of law). In Docket No. 366120, plaintiff also challenges the trial court's earlier order denying her motion for summary disposition under MCR 2.116(C)(10), and the denial of her motion for reconsideration. The appeals were consolidated "to advance the efficient administration of the appellate process." *Frownfelter v Esurance*, unpublished order of the Court of Appeals, entered March 20, 2024 (Docket Nos. 366118; 366120).

In Docket No. 366118, plaintiff argues: (1) the trial court erred when it determined as a matter of law she was domiciled with Frownfelter at the time of her motor vehicle accident, and (2) the custody order regarding Frownfelter and plaintiff's mother, Stephanie Lawrence (Lawrence), did not establish plaintiff's domicile at the time of the accident. In Docket No. 366120, plaintiff argues: (1) she was not a "resident" of Frownfelter's home under the terms of the Esurance's insurance policy, and (2) the term "resident" in Esurance's policy was ambiguous. We disagree and affirm.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

This matter involves a car accident in which plaintiff was injured. Plaintiff's parents, Lawrence and Frownfelter divorced in 2011, when plaintiff was seven years old. The judgment of divorce awarded joint physical custody and determined plaintiff and her brother Hunter Frownfelter (Hunter) were to reside with each parent 50% of the time. Despite the judgment of divorce determining Hunter and plaintiff were to split their time equally between Lawrence and

---

[1] Although these are both consent judgments, plaintiff preserved her right to appeal and challenge the trial court's decisions in earlier summary disposition motions. See *Sandoval v Farmers Ins Exchange*, ___ Mich App ___; ____ NW3d ____ (2024) (Docket Nos. 361166, 361176), abrogated by *Jaber v P & P Hospitality, LLC*, ___ Mich App ___; ___ NW3d ___ (2024) (Docket No. 363572); slip op at 1.

Frownfelter, plaintiff spent 75% of her time at Lawrence's house and 25% of her time at Frownfelter's house at the time of the accident.

On January 7, 2020, plaintiff spent the night at Frownfelter's house. On January 8, 2020, Hunter was driving himself and plaintiff to school and hit a patch of ice causing Frownfelter's car to slide off the road and crash into a tree. Plaintiff was severely injured and required emergency back surgery. Plaintiff filed a first-party complaint against Esurance, arguing Esurance violated the no-fault act, MCL 500.3101 *et seq.*, and breached the terms of its insurance policy when it delayed payment of plaintiff's insurance benefits. Esurance filed a third-party complaint against Progressive, Farmers, and Auto-Owners, arguing it was entitled to reimbursement.[2]

In the third-party action against the other insurers, Esurance moved for summary disposition under MCR 2.116(C)(10), arguing on the date of the accident plaintiff was domiciled with Lawrence, making Lawrence's insurance provider, Auto-Owners, a higher priority insurer.[3] Esurance argued the parties' custody order did not control plaintiff's domicile because plaintiff spent most of her time at Lawrence's house. The trial court cited to *Grange Ins Co of Mich v Lawrence*, 494 Mich 475, 512 n 78; 835 NW2d 363 (2013), in which our Supreme Court recognized the rare occurrence of the necessity of determining domicile by referring to a custody order in situations where the order grants parents joint physical custody and creates an equal division of physical custody. In such an event, plaintiff's domicile alternated with each parent. Finding the footnote applicable, the trial court determined plaintiff was domiciled with Frownfelter at the time of the accident.

Plaintiff, in the tort action against her father as owner of the vehicle involved, moved for summary disposition against Esurance under MCR 2.116(C)(10), arguing an exclusionary provision reducing the coverage limits in the insurance policy did not apply to her because she was not a resident of Frownfelter's household. The trial court referred to its earlier ruling regarding plaintiff's domicile, finding that because plaintiff was domiciled with Frownfelter, she was a resident of his household. Plaintiff moved for reconsideration, which the trial court denied. This appeal followed.

## II. MINOR DOMICILE

Plaintiff argues the trial court erred when it found she was domiciled with Frownfelter at the time of the accident. We disagree.

---

[2] Plaintiff's mother was insured under a no-fault policy issued by Auto-Owners. Plaintiff's father was insured under policies issued by the remaining insurance companies.

[3] Plaintiff initially filed a response to the motion which did not take a position and merely stated that the other briefs sufficiently set forth the facts and law necessary for the trial court to determine which insurer was first in the order of priority to pay benefits. But at oral argument on the motion, after the trial court rejected Auto-Owners' motion for summary disposition based upon a different issue, plaintiff argued against the Esurance motion and took the position that she was domiciled with her mother at the time of the accident.

## A. STANDARD OF REVIEW

Plaintiff challenges the trial court's denial of Esurance's motion for summary disposition under MCR 2.116(C)(10), which declared plaintiff domiciled with Frownfelter on the day of the accident.

> This Court reviews de novo a decision to grant or deny a motion for summary disposition. Summary disposition under MCR 2.116(C)(10) is appropriately granted where no genuine issue of material fact remains and the moving party is entitled to judgment as a matter of law. A domicile determination is generally a question of fact; however, where the underlying material facts are not in dispute, the determination of domicile is a question of law for the circuit court. [This Court] likewise review[s] de novo issues of statutory interpretation. [*Grange*, 494 Mich at 489-490.]

"Questions of statutory interpretation, construction, and application are reviewed de novo." *Johnson v Johnson*, 329 Mich App 110, 118; 940 NW2d 807 (2019). "[T]he interpretation of a contract is a question of law reviewed de novo on appeal. . . ." *Lueck v Lueck*, 328 Mich App 399, 404; 937 NW2d 729 (2019) (quotation marks and citation omitted; alterations in original).

## B. ANALYSIS

"Michigan's no-fault act generally abolishes tort liability arising from the ownership, maintenance, or use of a motor vehicle." *Grange*, 494 Mich at 490. "Instead, insurance companies are required to provide first party insurance benefits for accidental bodily injury arising out of the use of a motor vehicle, which are commonly referred to as personal protection insurance (PIP) benefits." *Id*. MCL 500.3114(1) "provides the general rule for determining which Michigan insurer is liable to provide PIP benefits." *Grange*, 494 Mich at 490. The statute states, in pertinent part:

> [A] personal protection insurance policy described in section [MCL 500.3101(1)] applies to accidental bodily injury to the person named in the policy, the person's spouse, and a relative of either domiciled in the same household, if the injury arises from a motor vehicle accident. [MCL 500.3114(1).]

The parties dispute whether plaintiff, who was a relative of the insured Frownfelter, was domiciled in Lawrence's or Frownfelter's household when the accident occurred.

MCL 500.3114(1) does not define the word "domicile." Our Supreme Court has explained, "domicile is acquired by the combination of residence and the intention to reside in a given place . . . . If the intention of permanently residing in a place exists, a residence in pursuance of that intention, however short, will establish a domicile." *Grange*, 494 Mich at 495 (quotation marks and citation omitted; alteration in original). "The traditional common-law inquiry into a person's 'domicile,' then, is generally a question of intent, but also considers all the facts and circumstances taken together." *Id*.

To determine domicile, our Supreme Court articulated a multifactor test, in which "no one factor is determinative." *Grange*, 494 Mich at 497. Those factors are not particularly relevant

here as we are dealing with a minor. "Instead, the child's domicile is determined by reference to the domicile of his or her parents." *Id*. at 503. But, of course, this cannot control where the parents are divorced and maintain separate domiciles.

"The inquiry into a child's domicile becomes more complicated when the child's parents are divorced." *Id*. at 504. "Under our common law . . . a child's domicile upon the divorce of [her] parents and entry of a custody order is established by operation of law consistent with the terms of the custody order." *Id*. at 505. Our Supreme Court emphasized:

> Just as a person does not have two domiciles, a person likewise does not have a domicile set by operation of law for some purposes and perhaps a different domicile for other purposes—such as for consideration under the no-fault act or any other statute that uses the term "domicile." [*Id*.]

Our Supreme Court held: "[I]n the instance where a child's parents are divorced, the family court's custody order entered pursuant to the Child Custody Act[4] establishes the child's domicile by operation of law and is determinative of the child's domicile for purposes of the no-fault act . . . ." *Id*. at 510 (footnote added). Stated differently, "courts presiding over an insurance coverage dispute involving the minor child of divorced parents must treat a custody order as conclusive evidence of a child's domicile." *Id*. at 511. "Where a court order sets a child's custody or domicile by operation of law, the factual circumstances or the parents' or child's intentions are irrelevant to the domicile determination." *Id*. "Rather, the appropriate analysis is focused on the terms of the custody order." *Id*.

Our Supreme Court acknowledged the distinction between physical custody and legal custody. "Physical custody pertains to where the child shall physically 'reside,' whereas legal custody is understood to mean decision-making authority as to important decisions affecting the child's welfare." *Id*. As a result, "the relevant consideration is which parent has *physical custody* under the terms of the [custody] order" because "the focus under our common law with respect to domicile mostly concerns a question of location . . . ." *Id*. at 511-512.

Our Supreme Court recognized "that determining domicile by reference to a custody order may appear to lead to a perplexing result where the order grants each parent joint physical custody . . . *and* creates an equal 50/50 division of physical custody." *Id*. at 512 n 78. "[A]n award of joint physical custody alone does not automatically create this potentially perplexing situation because although an order may award joint physical custody, it may also establish that one parent has *primary* physical custody." *Id*. "Alternatively, the details of the physical custody division may reveal that one parent has physical custody of the child more often than the other parent despite the joint physical custody arrangement" *Id*. This issue arises only in the "very rare event that a custody order awards joint physical custody *and* grants both parents an equal amount of time to

---

[4] MCL 722.21 *et seq.*

exercise physical custody . . . ." *Id*. Indeed, the child custody statute[5] does not "require that the child reside with each parent for an *equal* amount of time to constitute joint physical custody." *Id*.

Our Supreme Court held: "In the unusual event that a custody order *does* grant an equal division of physical custody, and only in this instance, then the child's domicile would alternate between the parents so as to be the same as that of the parent with whom he is living at the time." *Id*. In other words, "the child's domicile [would be] with the parent who has physical custody as established by the custody order at the specific time of the incident at issue." *Id*.

This Court applied *Grange*, 494 Mich at 512 n 78, in *Corbin v Meemic Ins Co*, 340 Mich App 140; 985 NW2d 217 (2022). In *Corbin*, "the order of filiation did not establish a primary custodial parent or otherwise fix a parenting time schedule." *Id*. at 152. The "plaintiff's schedule was left to her parents so long as they continued to cooperate and work together." *Id*. This Court noted *Grange*, 494 Mich at 512 n 78, referred "to the unusual situation in which a custody order awards *both* joint physical custody and equal parenting time." *Corbin*, 340 Mich App at 153. In *Corbin*, the custody order "reserved to the parents their right to determine both residence and domicile, with some limitations." *Id*. "The order did not set forth a parenting time schedule, let alone one that required equal parenting time." *Id*. This Court held "the trial court needed to look beyond the order of filiation to determine [the] plaintiff's actual domicile, as the order of filiation was not dispositive." *Id*. As a result, the factors from *Workman v Detroit Auto Inter-Ins Exc*, 404 Mich 477, 496-497; 274 NW2d 373 (1979), and *Dairyland Ins Co v Auto-Owners Ins Co*, 123 Mich App 675, 681-682; 333 NW2d 322 (1983), should have guided the trial court's analysis. *Corbin*, 340 Mich App at 153.

In this matter, plaintiff was a minor child of divorced parents at the time of the accident, triggering a *Grange* analysis. The issue is whether the custody agreement awarded "joint physical custody *and* grant[ed] both parents an equal amount of time to exercise physical custody . . . ." *Grange*, 494 Mich at 512 n 78. We hold it did.

The custody order awarded "joint legal custody of the minor children" to Lawrence and Frownfelter. However, "the relevant consideration is which parent has *physical custody* under the terms of the order." *Id*. at 512. The custody order awarded Lawrence and Frownfelter "joint physical custody of the minor children . . . ." Further, the order stated "that the parties shall have parenting time with the minor children . . . at such times and places as shall be agreed upon by the parties." The order noted, "a child whose parental custody is governed by this Court Order has a legal residence with each parent." The order clarified: "The residence of the minor children . . . shall be with [] [Lawrence], at her current address . . . 50% of the time and with [] [] [Frownfelter], at his current address . . . ." The order did not specify plaintiff was to reside with Frownfelter for the remaining 50% of the time, although this was implied. Like in *Corbin*, 340 Mich App at 153, "the order of filiation left parenting time to the discretion of the parents." But the custody order in *Corbin* "reserved to the parents their right to determine both residence and domicile . . . ." *Id*. In this matter, the order stated plaintiff had "a legal residence with each parent[,]" "50% of the time." Indeed, Lawrence explained, "at first it started out 50/50 [custody] obviously, kind of like most divorces do." In other words, Lawrence and Frownfelter initially acted in accordance with

---

[5] MCL 722.26a(7)(a).

the custody determination by equally dividing physical custody, providing further evidence the custody order required an equal split of physical custody.

The facts of this matter fall squarely within the situation contemplated by *Grange*, because the "custody order award[ed] joint physical custody *and* grant[ed] both parents an equal amount of time to exercise physical custody. . . ." *Grange*, 494 Mich at 512 n 78. The custody order awarded Lawrence and Frownfelter joint physical custody. Then it created "an equal 50/50 division of physical custody[,]" *id.*, which required plaintiff to reside with Lawrence 50% of the time and Frownfelter the other 50% of the time. Although the order "left parenting time to the discretion of the parents[,]" *Corbin*, 340 Mich App at 153, physical custody is not parenting time. See *Shade v Wright*, 291 Mich App 17, 22; 805 NW2d 1 (2010) (quotation marks and citation omitted) (distinguishing between "legal custody, physical custody, or *parenting time* with respect to a child.") "Physical custody pertains to where the child shall physically 'reside' . . . ." *Grange*, 494 Mich at 511. Since the custody order awarded joint physical custody, and granted the parents an equal amount of time to exercise parenting time while plaintiff *resided* with them, *Grange* applies. *Grange*, 494 Mich at 512 n 78.

Our Supreme Court cautioned, "an award of joint physical custody alone does not automatically create this potentially perplexing situation because although an order may award joint physical custody, it may also establish that one parent has *primary* physical custody." *Id*. No primary physical custodian can be discerned from the custody order. Responsibilities regarding plaintiff and Hunter were to be equally divided between Lawrence and Frownfelter. For example, the order stated Lawrence and Frownfelter "shall carry health insurance for the minor children . . . enrolled on both parties [sic] employer provided medical insurance plan . . . and in the event that such insurance plan is not available, the parties *shall equally divide* the cost of the health insurance." (Emphasis added.) Lawrence was "responsible for fifty percent (50%) of any uninsured or unreimbursed health care expenses and [] [Frownfelter] [was] responsible for fifty percent (50%). . . ." Lawrence and Frownfelter had the right to claim Hunter and plaintiff as dependents for income tax purposes. In sum, the custody order was silent about who held primary physical custody and granted Lawrence and Frownfelter an equal amount of time to exercise parenting time.

Because the custody provision in the divorce judgment prevails and this is one of the rare situations contemplated in *Grange*, plaintiff's "domicile [was] with the parent who ha[d] physical custody as established by the custody order at the specific time of the incident at issue." *Grange*, 494 Mich at 512 n 78. It was undisputed Frownfelter had physical custody of plaintiff on the day of the accident because plaintiff physically resided with him under the terms of the custody order on that day. As a result, the trial court did not err when it held plaintiff was domiciled with Frownfelter on the day of the accident, and we affirm.

III. INSURANCE CONTRACT

Next, plaintiff argues she was not a resident of Frownfelter's household under the terms of the insurance policy. We disagree.

A. STANDARD OF REVIEW

-7-

Plaintiff challenges the trial court's order denying her motion for summary disposition under MCR 2.116(C)(10), and the trial court's order denying her motion for reconsideration.

> This Court reviews de novo a decision to grant or deny a motion for summary disposition. Summary disposition under MCR 2.116(C)(10) is appropriately granted where no genuine issue of material fact remains and the moving party is entitled to judgment as a matter of law. A domicile determination is generally a question of fact; however, where the underlying material facts are not in dispute, the determination of domicile is a question of law for the circuit court. [This Court] likewise review[s] de novo issues of statutory interpretation. [*Grange*, 494 Mich at 489-490.]

"This Court reviews a trial court's decision to grant or deny a motion for reconsideration for an abuse of discretion." *Farm Bureau Ins Co v TNT Equip, Inc*, 328 Mich App 667, 672; 939 NW2d 738 (2019). "A trial court abuses its discretion if it chooses an outcome outside the range of principled outcomes." *Id*. "The interpretation and construction of insurance contracts are also questions of law, which this Court reviews de novo." *Citizens Ins Co v Secura Ins*, 279 Mich App 69, 72; 755 NW2d 563 (2008).

## B.  ANALYSIS

"PIP [personal protection insurance] benefits are mandated by statute under the no-fault act, MCL 500.3105, and, therefore, the statute is the 'rule book' for deciding the issues involved in questions regarding awarding those benefits." *Dawson v Farm Bureau Mut Ins Co of Mich*, 293 Mich App 563, 568; 810 NW2d 106 (2011) (citation omitted; alteration in original). On the other hand, insurance policies can provide greater benefits, even for mandated coverages, than those required by statute. *Mapp v Progressive Ins Co*, 346 Mich App 575, 600; 13 NW3d 643 (2023).

"The same contract construction principles apply to insurance policies as to any other type of contract because it is an agreement between the parties." *Hastings Mut Ins Co v Safety King, Inc*, 286 Mich App 287, 291; 778 NW2d 275 (2009). "Thus an insurance policy must be read as a whole to determine and effectuate the parties' intent." *Id*. at 292. "The terms of the contract are accorded their plain and ordinary meaning." *Id*. "If the contractual language is unambiguous, courts must interpret and enforce the contract as written because an unambiguous contract reflects the parties' intent as a matter of law." *Id*. It is "[a] fundamental tenet of our jurisprudence . . . that unambiguous contracts are not open to judicial construction and must be *enforced as written*." *Dawson*, 293 Mich App at 569 (quotation marks and citation omitted; alterations in original). A "mere judicial assessment of 'reasonableness' is an invalid basis upon which to refuse to enforce contractual provisions." *Id*. (quotation marks and citation omitted). "The reason [for this] is clear: It is not the province of the judiciary to rewrite contracts to conform to the court's liking, but instead to enforce contracts as written and agreed to by the parties." *Id*.

The custody agreement determined plaintiff's residence would be with Frownfelter 50% of the time. However, "the terms of a contract must be enforced as written where there is no ambiguity." *Wells Fargo Bank, NA v Null*, 304 Mich App 508, 519; 847 NW2d 657 (2014) (citation omitted). In other words, when contractual terms are unambiguous, the trial court and

-8-

this Court lack "the authority to look beyond the four corners of the document[]." *Zurich Ins Co v CCR & Co (On Rehearing)*, 226 Mich App 599, 606; 576 NW2d 392 (1997).

"Coverage under a policy is lost if any exclusion in the policy applies to an insured's particular claims." *Century Surety Co v Charron*, 230 Mich App 79, 83; 583 NW2d 486 (1998). "Clear and specific exclusions must be given effect because an insurance company cannot be liable for a risk it did not assume." *Id*. However, "[e]xclusionary clauses in insurance policies are strictly construed in favor of the insured." *Id*.

The exclusionary provision at issue states:

To the extent that the limits of liability for this coverage exceed the *"minimum limits"* of liability required by the financial responsibility law of the state in which a *"covered auto"* is principally garaged, *"we"* do not provide Liability Coverage for any *"insured"*:

A. For *"bodily injury"* to *"you"* or any *"family member"* for any damages in excess of the *"minimum limits"*.

The policy defined "family member" as: "Any person related to *'you'* by blood, marriage, or adoption who is a resident of *'your'* *'household'*[.]" A " *'[h]ousehold'* consists of *'you'*, a *'family member'*, . . . and other people who are not related to *'you'*, who live together in the same housing unit. A housing unit includes a house . . . located at the address listed in *'your'* Declarations page."

It is undisputed plaintiff is Frownfelter's daughter and is related to him by blood. The issue is whether she was a resident of his household. If she was, then the exclusionary provision applies and defendant Esurance was not required to provide coverage to her "for any damages in excess of the minimum limits." The minimum limit was "$20,000.00 for [plaintiff's] bodily injury. . . ." But if plaintiff was not a resident of Frownfelter's household, the policy entitled plaintiff to as much as $250,000. Given the difference in payout amounts, it is understandable why the parties want their definitions of "resident" to control.

Despite defining "family member," the policy does not explicitly define the term "resident" of the insured's household. Plaintiff argues Frownfelter's application for insurance establishes who qualifies as a resident. The application lists Frownfelter and Hunter under "Driver and Resident Information." Plaintiff is conspicuously absent.

The application noted: "You, your spouse, all members of your household 14 years or older . . . are listed above [under Driver and Resident Information]." Plaintiff contends because this section of the application did not list her as a resident, and she was over 14 years of age, she could not be considered a resident for purposes of the insurance policy. We disagree.

Were we writing on a blank slate, we might agree with plaintiff. Indeed, a similar issue was present in *Mapp,* although in that case it was the inclusion, rather than exclusion, of the plaintiff's name in the "Drivers and resident relatives" listing. *Mapp,* 346 Mich App at 599. But we cannot conclude that plaintiff's absence from that list in the policy at issue controls. First, the trial court determined that once it had decided that plaintiff was domiciled with Frownfelter at the time of the accident, it necessarily followed that she resided with him. Indeed, this conclusion is

consistent with the Supreme Court's observation in *Grange* that "domicile is acquired by the combination of residence and the intention to reside in a given place . . . ."  494 Mich at 495 (quotation marks and citation omitted).  Second, returning to the judgment of divorce, it did specifically state that plaintiff's residence was with both her mother and her father.

Had the policy included a definition of "resident" that would exclude plaintiff, a different result would obtain here.  But in the absence of any definition, we must look to other sources.  See *Mapp,* 346 Mich App at 595-596.  And the most pertinent sources to this case are the trial court's determination of domicile, which we have already affirmed, and the judgment of divorce that specifically determines the place of residence, which we find is controlling as we understand *Grange.*

## IV.  INSURANCE POLICY AMBIGUITY

Lastly, plaintiff argues the trial court erred when it found the term "resident" in the insurance policy was unambiguous.  But having concluded that it is the determination of "domicile" and the provisions of the divorce judgment that controls, rather than the insurance policy, in defining whether plaintiff was a resident of her father's home at the time of the accident, we need not address this issue.  *Grange,* 494 Mich at 511.  Plaintiff resided part of the time with her father, pursuant to the divorce decree, and part of the time with her mother; she went to school from both parents' houses.  As *Grange* made clear, we look to the custody order and plaintiff's father shared physical and legal custody of plaintiff.  Physical custody is the "relevant consideration;" "[p]hysical custody pertains to where the child shall physically 'reside,' " and plaintiff resided with her father on the day of the accident.  *Id.* at 511-512.  Therefore, the term "resident," although not defined in the policy, is unambiguous, was defined pursuant to the custody orders, and is dispositive for purposes of this case.

## V.  CONCLUSION

Affirmed.  Defendants may tax costs.

/s/ Kathleen A. Feeney